UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MEGAN THIEL-MACK | CIVIL ACTION |
| VERSUS | NO. 24-2681 |
| BAPTIST COMMUNITY HEALTH SERVICES, INC. | SECTION "A" (5) |

**ORDER AND REASONS**

Before the Court is a **Motion to Dismiss (Rec. Doc. 7)** filed by Defendant Baptist Community Health Services, Inc. ("BCHS"). The motion, set for submission on February 19, 2025, is before the Court on the briefs without oral argument.[1] For the following reasons, the motion is denied.

**I. Background**

*a. Factual background*

On May 31, 2024, Ms. Megan Thiel-Mack ("Ms. Thiel") was terminated from her position as the Director of Behavioral Health at Baptist Community Health Services, Inc. ("BCHS" or "Defendant").[2] Her complaint alleges that her actions preceding her termination are protected under certain whistleblower provisions of the Employee Retirement Income Security Act ("ERISA") and, thus, that her termination amounts to unlawful retaliation under ERISA.[3]

Ms. Thiel was initially hired by BCHS in May 2020 as a clinical social worker and was promoted to Director of Behavioral Health shortly thereafter.[4] As a BCHS employee, she participated in the BCHS-administered ERISA 401(k) Profit Sharing Plan and Trust, which

---

[1] BCHS requested oral argument. *See* Rec. Doc. 9. Considering the parties' excellent briefing, the Court is not persuaded that oral argument would be helpful in resolving the issues presented.

[2] Complaint, Rec. Doc. 1, ¶ 6.

[3] *See id.* ¶¶ 27, 34–42.

[4] *Id.* ¶ 8.

allowed her to invest money into the tax-deferred BCHS 401(k) plan.[5] The origin of this dispute occurred at some point during 2022, when BCHS stopped depositing employee 401(k) salary contributions into employee accounts.[6]

On January 12, 2023, having learned that her periodic contributions were not being delivered to her account, Ms. Thiel sent inquiry emails to BCHS's Chief Executive Officer and Chief Operating Officer, and to a representative at Paycom (the payroll processing company for BCHS).[7] The problem was not resolved four months later, prompting Ms. Thiel to seek a withdrawal of her funds from the 401(k) account.[8] As a result of her request, the BCHS investment advisor tried (but failed) to solve the problem.[9] In May 2023, Ms. Thiel sent another email—this time to representatives of Paycom, Principal Life Insurance Company (the company selected to invest the money in the BCHS 401(k) plan), New Orleans Baptist Association, and BCHS—asking where the seventeen missing contributions were located.[10] On June 26, 2023, Ms. Thiel sent yet another email to BCHS leadership.[11] The following day, still without an answer, Ms. Thiel brought her problem to the BCHS Board President, Michael Flores.[12] As a member of the board, Mr. Flores allegedly had no power to remedy the 401(k) issue, and he noted as much when he forwarded her email to the Chief Executive Officer, Jeremy Simmons.[13] According to her complaint, Mr. Simmons and the BCHS Chief Financial Officer, Cary Calhoun, both contacted Ms. Thiel to

---

[5] *Id.* ¶ 13.

[6] *Id.* ¶ 15.

[7] *Id.* ¶¶ 16–18.

[8] *Id.* ¶ 19.

[9] *Id.* ¶¶ 19–20.

[10] *Id.* ¶ 21.

[11] *Id.* ¶ 22.

[12] *Id.* ¶ 24.

[13] *Id.*

admonish her for taking her problem to Mr. Flores and/or for copying persons outside of BCHS on her emails.[14]

It is unclear whether Ms. Thiel's emails prompting the June admonishments were the driving factor in sparking a solution, but the 401(k)-contribution issue was ultimately rectified in October 2023 when BCHS completed a Voluntary Fiduciary Correction Plan ("VFCP") designed to make each employee's retirement account whole.[15] After the VFCP was complete, however, Ms. Thiel alleges that her relationship with BCHS was severely strained.[16]

In the months that followed, Ms. Thiel alleges that she was "systematically isolated and mistreated within BCHS by management."[17] Examples of her alleged isolation and mistreatment include: (i) exclusion by the BCHS Chief Medical Officer, Dr. Hannah Pounds, from the hiring process for employees joining the behavioral health team; (ii) various instances of BCHS leadership interrupting Ms. Thiel's confidential behavioral health sessions with patients; (iii) attempts to covertly discard Ms. Thiel's personal property in her office; and (iv) deprivation of certain information, resources, and supplies for a recruiting event at the Tulane School of Social Work.[18]

On April 24, 2024, Ms. Thiel was informed that her contract with BCHS would not be renewed when it ended the following month,[19] and on May 31, 2024, her employment was, in fact, terminated.[20] This lawsuit followed six months later.

---

[14] *Id.* ¶¶ 24–25.

[15] *Id.* ¶ 26.

[16] *See id.* ¶¶ 27–33.

[17] *Id.* ¶ 28.

[18] *Id.* ¶¶ 28–29.

[19] *Id.* ¶ 30.

[20] *Id.* ¶ 30, 33.

### b. *Procedural background*

#### 1. Plaintiff's Complaint

Ms. Thiel filed this lawsuit on November 14, 2024, asserting two causes of action: (i) ERISA retaliation; and (ii) state law direct action claims against unnamed insurers.[21]

In Count One, the cause of action presently before the Court, she alleges that her formal and informal reports of BCHS's ERISA violations ultimately caused BCHS to spend significant amounts of money to engage in a VFCP.[22] Because of this, she contends that BCHS management "terminated [her] with specific intent to retaliate against her for exercising her rights under ERISA, including reporting violations of ERISA which materially affected her plan, and reporting these violations to the BCHS Board President."[23] She further contends that BCHS's reason for her termination—"that it was restructuring the Behavioral Health department"—is evidence of pretext "because BCHS never entered into the minimum steps to engage in a restructuring with its federal partners in the Health Resources and Services Administration or filed any formal change of scope documents."[24]

#### 2. BCHS's Motion to Dismiss

BCHS strictly argues that Ms. Thiel has failed to state a claim under the plaint text of ERISA Section 510's "anti-retaliation provision" because she alleges that she voiced "unprompted internal complaints" to BCHS management, as opposed to giving information or testimony in an inquiry or proceeding.[25] *See* 29 U.S.C. § 1140.

The anti-retaliation provision contained within Section 510 reads as follows:

---

[21] *Id.* ¶¶ 34–46.

[22] *Id.* ¶¶ 38–39.

[23] *Id.* ¶ 40.

[24] *Id.* ¶ 41.

[25] Def.'s Mot. to Dismiss, Rec. Doc. 7-1, at 5.

> It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has ***given information or has testified or is about to testify in any inquiry or proceeding*** relating to this chapter or the Welfare and Pension Plans Disclosure Act.

*Id.* (emphasis added).

Having considered BCHS's motion and Ms. Thiel's response, it is clear to the Court that the dispositive legal issue in this case is a two-pronged question of statutory interpretation: ***first***, whether Ms. Thiel's emails regarding the missing 401(k) contributions amounted to "giv[ing] information or [testimony]," *id.*; and ***second***, if the emails qualify as such, whether Ms. Thiel was participating "in any inquiry or proceeding relating to [ERISA] or the Welfare and Pension Plans Disclosure Act." *Id.*

As it relates to the first prong, BCHS contends that the question of whether ERISA's anti-retaliation provision extends to intra-office communications is unresolved in the Fifth Circuit.[26] Ms. Thiel, on the other hand, argues that "intraoffice complaints are protected activity under ERISA by several Courts, including the Fifth Circuit itself."[27] As to the second prong, BCHS argues that "[b]ecause Congress excluded a complaint and reporting clause when drafting ERISA, yet includ[ed] those clauses when drafting other statutory anti-retaliation provisions, Section 510's text dictates that complaints and reports about perceived violations delinked from an inquiry and proceedings are not covered [by] ERISA."[28] In opposition, Ms. Thiel contends that "the statute's plain text does not require an 'inquiry' [*sic*] display any particular formalities, or that the information be 'solicited' by management."[29]

---

[26] *See id.*

[27] Opp. to Mot. to Dismiss, Rec. Doc. 8, at 7.

[28] Rec. Doc. 7-1, at 6–7.

[29] Rec. Doc. 8, at 5.

Having analyzed the first prong, the Court agrees with BCHS that the answer has yet to be fully determined in the Fifth Circuit. Because greater factual development is necessary before delving into the question of statutory interpretation, the Court declines to address the merits of the parties' arguments related to the second prong at this stage of the proceedings.

## II. Law and Analysis

### a. *Rule 12(b)(6) standard*

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint*.*" *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations

6

found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, (2007)).

    **b. *The Fifth Circuit has not interpreted the breadth of the anti-retaliation provision contained within ERISA Section 510.***

As previously noted, the parties dispute whether the Fifth Circuit has determined the issue presently before the Court. Ms. Thiel argues that two Fifth Circuit cases—*Anderson v. Electronic Data Systems Corp.*, 11 F.3d 1311 (5th Cir. 1994) and *Sherrod v. United Way Worldwide*, 821 F. App'x 311 (5th Cir. 2020)—stand for the proposition that intra-office complaints are protected activity under Section 510.[30] The Court disagrees.

In *Anderson*, the plaintiff-appellant was employed as the "Manager of Investments and Debt" in his employer's "Domestic Treasury Department." 11 F.3d at 1312. He was responsible for administering investment assets in excess of $1.3 billion before he was allegedly "demoted and discharged for his refusal to commit illegal acts and for reporting the activities of another employee." *Id.* The alleged "illegal acts" included signing "approval or payment invoices on behalf of the pension portfolios under his management and supervision . . . without approval of the pension trustees" and drafting minutes for meetings he did not attend that were related to his employer's retirement plan, both of which he knew to be ERISA violations.[31] *Id.*

Anderson sued his employer in state court asserting causes of action for wrongful discharge, tortious interference with prospective business and contractual relationships, and

---

[30] Rec. Doc. 8, at 7.

[31] The Court notes that *how* he reported the violations is not disclosed in the opinion.

infliction of emotional distress; but the petition did not allege any federal causes of action. *Id.* After removal, the defendants were either voluntarily dismissed or obtained summary judgments, which prompted Anderson's appeal. *Id.* On appeal, he did not challenge the summary judgment rulings, but instead asked the court to vacate the judgments and direct the remand of the case to state court on grounds that the district court lacked subject matter jurisdiction. *Id.* Despite the absence of a federal cause of action in the state court petition, his employer argued that the case was properly removed by virtue of the federal preemption afforded by ERISA. *Id.*

As such, the Fifth Circuit *only* considered (i) whether Anderson's claims were preempted by ERISA,[32] and (ii) whether ERISA's "total preemption" doctrine applied to create federal question jurisdiction thus supporting removal of the case to federal court.[33] *Id.* at 1313. In other words, the text of *Anderson* makes clear that its holdings are limited to whether federal law preempts a state law claim. The opinion does not offer a statutory interpretation of Section 510's anti-retaliation provision; and to the extent it does reference the anti-retaliation provision, the references[34] are no more than a "passing remark [which] amounts to a shorthand description of §

---

[32] On this issue the court held:

> [A] state wrongful discharge cause of action based on a refusal to commit violations of ERISA and reporting such violations to management is preempted by ERISA, because such a claim relates to an ERISA plan and is expressly preempted by ERISA § 514, and because the cause of action would conflict with the enforcement provisions of §§ 502(a) and 510 of ERISA.

*Anderson*, 11 F.3d at 1314.

[33] On this issue the court held:

> Anderson's claim of demotion and termination for failing to commit acts in violation of ERISA and reporting such violations falls within the scope of the civil enforcement provision of ERISA, and hence created removal jurisdiction.

*Id.* at 1315.

[34] *See id.* at 1314:

> Section 510 addresses discharges for exercising ERISA rights or for the purpose of interfering with the attainment of ERISA rights, as well as discharges for providing information or testimony relating to ERISA.

1140, not a holding (or for that matter even a considered dictum) that §1140 covers every complaint about a violation, even complaints delinked from an inquiry or proceeding." *Sexton v. Panel Processing, Inc.*, 754 F.3d 332, 341 (6th Cir. 2014).

The second case Ms. Thiel refers to is unconvincing for similar reasons. In *Sherrod*, the Fifth Circuit "decline[d] to reach a conclusion on . . . legal issues concerning the reach of Section 510 liability." 821 F. App'x at 315. And, despite Ms. Thiel's representation that the Fifth Circuit considers "unsolicited informal complaints to be protected activity" (Rec. Doc. 8, at 7 (quoting *Sherrod*, 821 F. App'x at 315 n.1)), she failed to include in her argument that the same footnote expressly states "[a]dmittedly, however, *Anderson* does not provide analysis on the topic and is not very clear." *Sherrod*, 821 F. App'x at 315 n.1.

Accordingly, the Court finds that the scope and application of ERISA Section 510's anti-retaliation provision is an open question of law in the Fifth Circuit.

### c. *Greater factual development is necessary before delving into the question of statutory interpretation.*

Given the novel nature of the legal question presented in this case regarding the scope and application of the terms "giv[ing] information or [testimony]," and "inquiry or proceeding," the Court concludes that allowing for greater factual development before delving into statutory interpretation is the most prudent course. *See* 5B Wright & Miller et al., Fed. Prac. & Proc. Civ. § 1357 (4th ed. 2024) (noting that courts "should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or even 'extreme,' since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's

---

*See also id.* at 1315:

> ERISA § 510 broadly prohibits . . . the discharge or other adverse treatment of any person because he has given information or testimony relating to ERISA.

suppositions"). Once the record more clearly reflects,[35] for example, the extent of (i) Ms. Thiel's communications with BCHS, (ii) any investigation or inquiry conducted by BCHS, and (iii) Ms. Thiel's participation (if any) in an investigation or inquiry, this Court will be much better positioned to address the unresolved legal question that this case presents.

Accordingly;

**IT IS ORDERED** that **Baptist Community Health Services, Inc.'s Motion in Dismiss (Rec. Doc. 7)** is **DENIED**.

March 18, 2025

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[35] BCHS correctly notes in its reply that (i) "[o]n a motion to dismiss, the 'factual universe is bounded by the four corners of the complaint,'" Rec. Doc. 11, at 1 (quoting *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011)), and (ii) "[i]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *Id.* (quoting *Becnel v. St. Charles Par. Sheriff's Off.*, No. 15-1011, 2015 WL 5665060, at *1 n.3 (E.D. La. Sept. 24, 2015) (internal quotations omitted)).

The Court considered Ms. Thiel's well-pleaded factual allegations, assumed their veracity, and determined that, barring the resolution of the novel legal question before the Court, the well pleaded facts plausibly give rise to an entitlement to relief. *See Ashcroft*, 556 U.S. at 679.